IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| SONA SCHMIDT-HARRIS, an individual, Plaintiff, v. ALLSTATE INSURANCE COMPANY, Defendant. | MEMORANDUM DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>Case No. 2:13-CV-609 TS<br><br>District Judge Ted Stewart |
|---|---|

This matter is before the Court on cross Motions for Summary Judgment. For the reasons discussed below, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion.

## I. BACKGROUND

Plaintiff Sona Schmidt-Harris began working for Defendant Allstate Insurance Company ("Allstate") on February 23, 2006, on a temporary basis through Kelly Law Registry at a rate of $21.00 per hour. Shortly thereafter, Plaintiff applied for employment with Allstate. Plaintiff was ultimately hired by Allstate.

Prior to her receiving an offer from Allstate, Allstate conducted a starting salary equity analysis.[1] That analysis determined that Plaintiff's starting salary should be $875.00 per week, or $45,500.00 per year.[2] This amount is reflected in Plaintiff's New Hire Information Sheet[3] and

---

[1] Docket No. 30 Ex. C-1.

[2] *Id.*

[3] *Id.* Ex. C-2.

1

is referenced in emails concerning a "buy-out" fee that Allstate was required to pay Kelly Law Registry.[4]

On April 4, 2006, Allstate sent Plaintiff an email entitled Allstate Acceptance Letter (the "Acceptance Letter"). The Acceptance Letter stated that Plaintiff's "current annualized base salary is $54,876.00, paid on a bi-weekly basis."[5]

Plaintiff began her employment with Allstate on or about April 17, 2006. Soon after she was hired, Plaintiff became curious about her salary.[6] Plaintiff contacted Defendant and was informed that her salary was $45,500.00.[7] After receiving this information, Plaintiff stated that she "grumbled within myself" but did not complain to anyone at Allstate.[8] Plaintiff continued to work for Allstate and her pay was regularly adjusted.

In 2013, when clearing out some documents she had stored at her parent's house, Plaintiff came across the Acceptance Letter. Plaintiff noticed the discrepancy between the amount listed in the Acceptance Letter and the amount that she was actually paid. Plaintiff brought the matter to Allstate's attention. Allstate declined to pay Plaintiff the additional amount she sought.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] In considering whether a genuine dispute of material fact exists, the Court determines whether a

---

[4] *Id.* Ex. C-3.
[5] *Id.* Ex. C-4.
[6] *Id.* Ex. A, at 83:6–9.
[7] *Id.* at 83:1–17
[8] *Id.* at 87:7–13.
[9] Fed. R. Civ. P. 56(a).

reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[10] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[11]

### III. DISCUSSION

Plaintiff's Complaint asserts three causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. Each cause of action stems from Plaintiff's belief that the Acceptance Letter created a contract between the parties and, that by paying Plaintiff less than the amount stated in the Acceptance Letter, Defendant is in breach and has converted Plaintiff's property. The Court will discuss each claim separately.

A.  BREACH OF CONTRACT

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[12] Plaintiff argues that the Acceptance Letter forms the basis of the parties' contractual relationship. Plaintiff contends that, by failing to pay her the base salary of $54,876.00 during her first year of employment and failing to base subsequent salary increases on this amount, Defendant has breached the agreement.

Defendant raises a number of arguments in defense. Defendant first argues that Plaintiff's employment with Allstate was at-will and, as a result, the Acceptance Letter does not constitute an employment contract.

---

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[11] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[12] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

Plaintiff does not contest that she is an at-will employee. However, she does assert that her at-will status is irrelevant to her breach of contract claim. The Court agrees that Plaintiff's at-will status does not completely resolve the issue before the Court.

"At-will employment exists when the employment contract contains no specified term as to duration and can be terminated at the will of either the employer or employee."[13] However, "[a]n at-will employment relationship does not mean that there is no contract between employer and employee."[14] As the Utah Court of Appeals explained, "[t]he at-will rule merely 'creates a presumption that any employment contract which has no specified term of duration is an at-will relationship.'"[15] The fact Plaintiff is an at-will employee does not negate the possible existence of a contract between the parties concerning wages. Thus, "whether [Plaintiff] was an at-will employee is not dispositive, or even relevant, to [Plaintiff's] claim for breach of her contract regarding [wages]."[16]

Defendant further argues Plaintiff's breach of contract claim fails because she continued her employment with Defendant after having been informed of her changed salary.

The Utah Supreme Court has explained,

> In the case of unilateral contract for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job,

---

[13] *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah Ct. App. 1996).

[14] *Id.*

[15] *Id.* (quoting *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)).

[16] *Id.*

4

although free to leave, the employment supplies the necessary consideration for the offer.[17]

In this case, Plaintiff testified that soon after she began her employment, she became curious about her compensation. Plaintiff contacted Defendant's human resource department and was informed that her salary was $45,500.00. While Plaintiff "grumbled" internally, she did not bring the matter to the attention of Allstate and continued her employment.

Plaintiff argues that "Allstate did not notify Plaintiff of the difference between the salary they had promised in the Offer Letter and the starting that they ultimately paid her."[18] As a result, Plaintiff argues, she "did not knowingly accept the change in the terms of her employment, and her continuing to work under these terms, not knowing of the change, cannot constitute acceptance of the new terms."[19]

Plaintiff's argument is not supported by her testimony or relevant case law. Plaintiff testified that she does not have a distinct recollection of receiving the Acceptance Letter.[20] However, her contract-based claims rest on the premise that Defendant made the offer contained in the Acceptance Letter and that she accepted that offer by accepting employment with Defendant. Without the offer contained in the Acceptance Letter, Plaintiff's claims would fail.

Even accepting Plaintiff's position that she accepted the offer in the Acceptance Letter, Plaintiff was informed that her compensation would be $45,500.00 shortly after she was hired. While there does not appear to be an express statement by Defendant that they were changing her

---

[17] *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991) (internal quotation marks omitted).

[18] Docket No. 38, at 13.

[19] *Id.* at 13–14.

[20] Docket No. 30 Ex. A, at 86:5–8.

pay from $54,876.00 to $45,500.00, Plaintiff has pointed to nothing requiring such an express statement. Rather, as set forth above, all that is required is that Plaintiff continue her employment with knowledge of the new or changed condition. It is undisputed that, soon after she began working for Allstate, Plaintiff was informed that she was being paid $45,500.00. Thus, even accepting Plaintiff's position that Defendant had initially agreed to pay her a higher amount, Plaintiff soon knew of this new or changed condition in her employment. Plaintiff's continued employment constitutes acceptance of that new or changed condition. Therefore, Plaintiff's breach of contract claim fails.[21]

B.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"As a general rule, every contract is subject to an implied covenant of good faith."[22] Under the covenant, there is "an implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract."[23]

Plaintiff argues that Defendant breached the implied covenant by failing to pay her the amount set out in the Acceptance Letter. As discussed above, even accepting Plaintiff's argument that Defendant initially agreed to pay her this amount, her pay was later modified. By continuing her employment with Defendant after she was informed of this change, Plaintiff accepted that change. As a result, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails.

---

[21] To the extent that Plaintiff seeks damages based on the period of time between her start date and the time she was informed her pay would be $45,500.00, such a claim would be barred by the applicable statute of limitations.

[22] *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998) (citation and internal quotation marks omitted).

[23] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011) (citation and internal quotation marks omitted).

C.  CONVERSION

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[24] "A basic requirement of conversion is '[t]hat there be a wrongful exercise of control over personal property in violation of the rights of its owner.'"[25]

Plaintiff's conversion claim, like her other claims, is premised on Defendant's failure to pay her the amount set out in the Acceptance Letter. For substantially the same reasons set forth above, this claim fails.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 30) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 24) is DENIED. It is further

ORDERED that Defendant's Motion to Change Trial Date (Docket No. 40) is DENIED AS MOOT.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

The hearing scheduled for October 21, 2014, is STRICKEN.

---

[24] *Bonnie & Hyde, Inc. v. Lynch*, 305 P.3d 196, 205 (Utah Ct. App. 2013) (citation and internal quotation marks omitted).

[25] *Id.* (quoting *Frisco Joes, Inc. v. Peay*, 558 P.2d 1327, 1330 (Utah 1977)).

DATED this 3rd day of September, 2014.

                                        BY THE COURT:

                                        _____

                                        Ted Stewart
                                        United States District Judge